Qinyu Fan, Esq.
Hang & Associates, PLLC
136-20 38th Avenue, Suite 10G
Flushing, NY 11354
Tel: (718) 353-8588
Fax: (718) 353-6288
Email: qfan@hanglaw.com
*Attorney for Plaintiff and proposed FLSA Collective*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Weiqing Cao, individually and on behalf of all other employees similarly situated,<br><br>Plaintiffs,<br><br>- against -<br><br>Honshu, LLC., d/b/a Honshu Sushi, and Fendai Chen,<br><br>Defendants. | Case No. 2:19-cv-15528<br><br>**COLLECTIVE ACTION COMPLAINT AND JURY TRIAL DEMAND** |

Plaintiff Weiqing Cao ("Plaintiff"), on his own behalf and on behalf of all others similarly situated, by and through his undersigned attorneys, Hang & Associates, PLLC, hereby files this complaint against the Defendants Honshu, LLC, d/b/a Honshu Sushi, and Fendai Chen (collectively "Defendants"), alleges and shows the Court the following:

## INTRODUCTION

1.      This is an action brought by Plaintiff on his own behalf and on behalf of similarly situated employees, including kitchen workers, waiters, sushi chefs, delivery drivers, delivery packagers, and all other non-exempt employees of the Defendants, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and the New Jersey Wage and Hour Law,

N.J.S.A.§34:11-56 et seq. ("NJWHL" hereinafter), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2    Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NJWHL by engaging in a pattern and practice of failing to pay their employees, including Plaintiff, compensation for all hours worked, overtime compensation for all hours worked over forty (40) each week, and improper retention of tips.

3.    Plaintiff alleges pursuant to the FLSA, that he is entitled to recover from the Defendants: (1) unpaid minimum wages, (2) unpaid overtime wages, (3) improper retention of tips, (4) liquidated damages, (5) prejudgment and post-judgment interest; and (6) attorneys' fees and costs.

4.    Plaintiff further alleges pursuant to NJWHL that he is entitled to recover from the Defendants: (1) unpaid minimum wages, (2) unpaid overtime wages, (3) improper retention of tips, (4) liquidated damages, (5) prejudgment and post-judgment interest; and (6) attorneys' fees and costs.

## JURISDICTION AND VENUE

5.    This Court has original federal question jurisdiction over this controversy under 29 U.S.C.  §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the NJWHL claims pursuant to 28 U.S.C. § 1367(a).

6.    Venue is proper in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

7.     Plaintiff Weiqing Cao ("Cao") is a resident of New York State and was employed by the Defendants' sushi restaurant, Honshu, LLC, d/b/a Honshu Sushi, ("Honshu Sushi" hereinafter) located at 95 Greene Street, Jersey City, New Jersey 07302.

8.     Plaintiff Cao was hired as a delivery driver, from December 2014 to June 26, 2019.

## DEFENDANTS

9.     Upon information and belief, Defendant, Honshu Sushi had gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year. Upon information and belief, Honshu Sushi purchased and handled goods moved in interstate commerce.

10.     Honshu Sushi has about 15 employees. Among them are 4 kitchen workers, 5 waiters, 6 sushi chefs, 4 delivery drivers, and a delivery packager.

11.      Upon information and belief, Defendant Fendai Chen (Chen) is the officer, and/or managing agent of Honshu Sushi at 95 Greene Street, Jersey City, New Jersey 07302 and participated in the day-to-day operations of Honshu Sushi. He interviewed Plaintiff over the phone and determined Plaintiff's salary rate. During Plaintiff's employment in Honshu Sushi, Chen supervised him, and handled Plaintiff's payrolls. He personally gave paychecks or cash to Plaintiff. Plaintiff got paid in a combination of cash and checks.

12.     Upon information and belief, employees were constantly subject to Chen's criticism and verbal abuse. Chen made comments and judgments on employee's work all the time.

13.     Thus, Defendant Chen acted intentionally and maliciously in management and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, NJWHL §12:56-2.1 and the regulations thereunder. Therefore, Plaintiff is jointly and severally liable with Honshu Sushi.

14.     At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Honshu Sushi.

15.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff his lawfully earned basic minimum hourly wages and overtime compensation, and made improper retention of employees' tips, in violation of the NJWHL.

16.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or conditions have been waived.

## STATEMENT OF FACTS

17.     Defendants committed the following alleged acts knowingly, intentionally and willfully.

18.     Defendants knew that the nonpayment of basic minimum hourly wages and overtime compensation, and the improper retention of Plaintiff's tips would financially injure Plaintiff and similarly situated employees and violate state and federal laws.

19.     From December 2014 to June 26, 2019, Plaintiff Cao was hired by Defendants to work as a delivery driver for Defendants' sushi restaurant business located at 95 Greene Street, Jersey City, New Jersey 07302.

20.     From December 2014 to the summer of 2018, Plaintiff Cao worked 6 days a week. From Monday to Friday except for Tuesday, Plaintiff has the same schedule. He would start driving Chen's car from New Jersey to Brooklyn to pick up all the employees of Honshu Sushi. He would arrive and pick up employees in Brooklyn at 10:30 am. It was Cao's job to pick up and drive everyone to Honshu Sushi, arriving at 11:00 am. Then Cao would start delivery until 3pm, and often delivery orders received prior to 3:00 pm had to be delivered. Between 3 pm and 4:45 pm, the sushi restaurant would close, and employees would have a lunch break. After 5 p.m.,

Plaintiff would go back to work until 10: pm. Then Plaintiff Cao had to drive all the employees back to their homes in Brooklyn and usually gets off work at or after 11:00am. Tuesday was Plaintiff's day off in the past 3 years. On Saturday and Sunday, Plaintiff Cao started picking employees up at 2:30 pm, and dropped them off in Brooklyn after work, without a break. Cao would get home at or around 12 am and 11 pm respectively on Saturday and Sunday. Therefore, from December 2014 to the summer of 2018, Plaintiff worked in total 66 hours per week.

21.    From the fall of 2018 to June 26, 2019, Plaintiff Cao was working on the same schedule, but taking Monday and Sunday off. Thus, Plaintiff Cao worked 5 days and in total 57.5 hours per week.

22.    At all relevant times, Plaintiff was paid at a fixed rate of $50 per day, regardless of his actual hours worked. Defendants paid Plaintiff biweekly in cash.

23.    Plaintiff could usually get $150 to $200 in tips per day. Absent any mutual agreement, those tips were tip credits could not be made towards his salary. There was no tip pool in Honshu Sushi either. However, without any agreement, Honshu Sushi retained 5% tip of almost all tips received by its delivery workers, including Plaintiff, because more than 90% of their orders were from Seamless.

24.    In addition to delivering food to Honshu Sushi's customers, Plaintiff Cao would help do some side work, e.g., packaging sources, packaging delivery orders into plastic bags, etc. Those works usually took approximately 1 hour per day.

25.    Defendants did not count or compensate Plaintiff Cao for overtime wages according to state and federal laws.

26.    Defendants committed the following alleged acts knowingly, intentionally and willfully.

27.     While employed by Defendants, Plaintiff was not exempt under federal and state laws requiring employers to pay employees overtime.

28.     Defendants did not provide Plaintiff and other employees with written notices about the terms and conditions of their employment upon hire in relation to their rate of pay, regular pay cycle and rate of overtime pay. Neither any agreement of the 5% tip reduction was reached.

29.     Defendants committed the foregoing acts against the Plaintiffs, the FLSA Collective Plaintiffs.

## COLLECTIVE ACTION ALLEGATIONS

30.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New Jersey State overtime rate (of time and one-half), in violation of the FLSA and NYWHL and the supporting federal and New Jersey State Department of Labor Regulations.

31.     Plaintiff brings this action individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom failed to receive overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members"), and have been subject to the same common decision, policy, and plan to not provide required wage notices at the time of hiring, in contravention to federal and state labor laws.

32.     Upon information and belief, the Collection Action Members are so numerous the joinder of all members is impracticable. The identity and precise number of such persons are unknown, and the facts upon which the calculations of that number may be ascertained are presently within the sole control of the Defendants. Upon information and belief, there are more

than Twenty (20) Collective Action members, who have worked for or have continued to work for the Defendants during the Collective Action Period, most of whom would not likely file individual suits because they fear retaliation, lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiff submits that this case should be certified as a collection action under the FLSA, 29 U.S.C. §216(b).

33.     Plaintiff will fairly and adequately protect the interests of the Collective Action Members, and has retained counsel that is experienced and competent in the field of employment law and class action litigation. Plaintiff has no interests that are contrary to or in conflict with those members of this collective action.

34.     This action should be certified as collective action because the prosecution of separate action by individual members of the collective action would risk creating either inconsistent or varying adjudication with respect to individual members of this class that would as a practical matter be dispositive of the interest of the other members not party to the adjudication, or subsequently impair or impede their ability to protect their interests.

35.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as collective action.

36.     Questions of law and fact common to members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds

generally applicable to all members. Among the questions of fact common to Plaintiff and other Collective Action Members are:

a. Whether the Defendants employed Collective Action members within the meaning of the FLSA;

b. Whether the Defendants failed to pay the Collective Action Members overtime wages for all hours worked above forty (40) each workweek in violation of the FLSA and the regulation promulgated thereunder;

c. Whether the Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

d. Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive, and statutory damages, interest, costs and disbursements and attorneys' fees.

37.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

38.     Plaintiff and others similarly situated have been substantially damaged by Defendants' unlawful conduct.

## STATEMENT OF CLAIM

### COUNT I

**[Violations of the Fair Labor Standards Act—Overtime Wages
Brought on behalf of the Plaintiff and the FLSA Collective]**

39.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

40.     The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

41.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

42.     Defendants' failure to pay Plaintiff and the FLSA Collective their overtime pays violated the FLSA.

43.     Here, Plaintiff Cao worked 66 hours a week from December of 2014 to the summer of 2018, and then 57.5 hours per week from the fall of 2018 to June 26, 2019. At all relevant times, Plaintiff was paid at a fixed rate of $50 per day regardless of the actual number of hours he worked every day.

44.     Therefore, at all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiff and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, et seq., including 29 U.S.C. §§207(a)(1) and 215(a).

45.     The FLSA and supporting regulations required employers to notify employees of employment law requirements. 29 C.F.R. §516.4.

46.     Defendants willfully failed to notify Plaintiff and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiff's and FLSA Collectives' labor.

47.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the FLSA Collective the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure the Plaintiff and Collective Action members. Therefore, Plaintiff and the FLSA collection shall recover from Defendants their unpaid overtime wages, and in an additional equal amount as liquidated damages.

48.     Despite of FLSA 3(m), FLSA has required that, "employers must provide the following information to a tipped employee before the employer may use the FLSA 3(m) tip credit: ... 5) that the tip credit will not apply to any tipped employee unless the employee has been informed of these tip credit provisions."

49.     Here, Plaintiff Cao was never informed of those tip credit provisions. Neither was there any agreement about tip credits. Therefore, tips received by Plaintiff Cao could not be considered as tip credits because during the entire employment, tips were excluded from wages, according to Plaintiff's understanding.

## COUNT II

### [Violations of the NJWHL—Overtime Wages
### Brought on behalf of Plaintiff]

50.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

51.     NJWHL 12:56-6.1 provides that, for each hour of working time in excess of 40 hours in any week, except for those exemptions set forth in N.J.S.A. 34:11-56a4 or as provided in N.J.A.C. 12:56-7.1, every employer shall pay to each of his or her employees, wages at a rate of not less than 1 and ½ times such employee's regular hourly wage.

52.     Defendants' failure to pay Plaintiff his overtime pays violated the NJWHL.

53.     Here, as discussed above, Plaintiff Cao worked 66 hours a week from December of 2014 to the summer of 2018, and then 57.5 hours per week from the fall of 2018 to June 26, 2019. At all relevant times, Plaintiff was paid at a fixed rate of $50 per day regardless of the actual number of hours he worked every day.

54.     Therefore, at all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiff for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the NJWHL.

55.     The NJWHL and supporting regulations required employers to notify employees of employment law requirements. NJWHL 8:43E-8.6 et seq.

56.     Defendants willfully failed to notify Plaintiff of the requirements of the employment laws in order to facilitate their exploitation of Plaintiff's labor.

57.     Defendants knowingly and willfully disregarded the provisions of the NJWHL as evidenced by their failure to compensate Plaintiff the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure the Plaintiff. Therefore, Plaintiff shall recover from Defendants their unpaid overtime wages, and in an additional equal amount as liquidated damages.

58.     As discussed above, because Plaintiff Cao was never informed of any tip credit provisions. Neither was there any agreement about tip credits, tips received by Plaintiff Cao could not be considered as tip credits because during the entire employment, tips were excluded from wages, according to Plaintiff's understanding.

## COUNT III

**[Violations of the Fair Labor Standards Act—Improper Retention of Tips/Gratuities Brought on behalf of the Plaintiff and the FLSA Collective]**

59.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

60.     29 USC §203 (m) (2) (b)provides that, "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

61.     According to Fact Sheet #15 Tipped Employees Under the Fair Labor Standards Act (FLSA) published by U.S. Department of Labor ("DOL" hereinafter), Wage and Hour division, "A tip is the sole property of the tipped employee regardless of whether the employer takes a tip credit. The FLSA prohibits any arrangement between the employer and the tipped employee whereby any part of the tip received becomes the property of the employer. For example, even where a tipped employee receives at least $7.25 per hour in wages directly from the employer, the employee may not be required to turn over his or her tips to the employer." It then provides an exception to that, "the requirement that an employee must retain all tips does not preclude a valid tip pooling or sharing arrangement among employees who customarily and regularly receive tips. The FLSA does not impose a maximum contribution amount or percentage on valid mandatory tip

pools. The employer, however, must notify tipped employees of any required tip pool contribution amount, may only take a tip credit for the amount of tips each tipped employee ultimately receives, and may not retain any of the employees' tips for any other purpose."

62. Although DOL published the above regulation in 2011 asserting as a general rule that, tips were the exclusive property of the employees, federal judicial circuits split on whether to treat 29 USC §203(m)(2) as an independent rule, or solely as a condition for employers to satisfy in order to make tips "tip credits" to satisfy one part of the minimum wage requirement. Some federal courts alleged that, there was no cause of action for improper retention of tips claims under FLSA because, Section 203(m) imposes conditions on taking a tip credit and does not state freestanding requirements pertaining to all tipped employees. In this way, some federal courts treated tip reduction requirement solely as a condition for employers to satisfy in support of their FLSA minimum wage claims and they do not consider tip reduction as a valid independent cause of action. However, not to mention DOL published their "final rule" in 2011 after the publication of the amended FLSA, Congress published Consolidated Appropriations Act 2018 in March, 2018 (115 Public Law 141), Title XII of which was "Tipped Employees" further clarifying Congress's legislative intent behind 29 U.S.C. 203(m)(2)(B).

63. Under Title XII of Consolidated Appropriations Act 2018 ("Title XII" hereinafter), Subsection (a) was titled as Prohibition on Keeping Tips, citing, amending, and redesignating Section 29 U.S.C. 203(m). The only purpose of such amendment and redesignation was to make it a separate paragraph emphasizing that, "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

64.     Title XII (b) specifies penalties and remedies to tip reduction claims by amending 29 US 216(b) to include that, 1) "any employer who violates section 3(m)(2)(B) shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages", 2) "the authority and requirements described in this subsection shall apply with respect to a violation of section 3(m)(2)(B)…", and 3) "any person who violates section 3(m)(2)(B) shall be subject to a civil penalty not to exceed $1,100 for each such violation, as the Secretary determines appropriate, in addition to being liable to the employee or employees affected for all tips unlawful;;y kept, and an additional equal amount as liquidated damages, as described in subsection (b)."

65.     The new Title XII would moot the previous "Final Rule" published by DOL, and related CFR sections, which covered related issues but not addressed by section 3(m) of the FLSA.

66.     Therefore, according to Title XII, tips under FLSA cannot be improperly retained by employers unless a valid tip pooling or sharing arrangement exists.

67.     Here, during Plaintiff's employment, there was no such tip pooling. Over 90% of their orders were from Seamless, and Defendants simply retained 5% of his tips without any valid tips pooling or sharing policy or agreement. Therefore, tips received by Plaintiff shall be considered as his sole property, and taking 5%, or any arrangement whereby any part of the tip received becomes the property of the employer violates the FLSA.

68.     Thus, Plaintiff shall be entitled to recovery of tips improperly retained by Defendants. Additionally, Plaintiff shall be entitled to liquidated damages equal to this amount, according to 29 USC §216(b) as discussed above.

## COUNT IV

### [Violations of the Fair Labor Standards Act—Minimum Wages
### Brought on behalf of the Plaintiff and the FLSA Collective]

69.      Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

70.      The FLSA requires employers of covered employees who are not otherwise exempt to pay these employees a minimum wage of not less than $7.25 per hour effective July 24, 2009.

71.      The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

72.      Here, from December 2014 to the summer of 2018, Plaintiff Cao worked for 11.75 hours per day on Monday, Wednesday and Thursday, 12.75 hours on Friday, 9.5 hours on Saturday, and 8.5 hours on Sunday. However, he was paid at a fixed rate of $50 per day regardless of the number of hours he worked a day. Therefore, Plaintiff's average hourly wage was $4.55 (50x6/66).

73.      From the fall of 2018 to June 26, 2019, Plaintiff Cao was working on the same weekly schedule, except for that he does not work on Sunday. And Plaintiff was still paid $50 per day. Therefore, Plaintiff Cao's average hourly wage was $4.35 (50x5/57.5).

74.      Thus, at all relevant times, Plaintiff Cao was paid below both the FLSA minimum wage rate ($7.50 per hour).

75.      Defendants' failure to pay Plaintiff at the required statutory minimum wage rate violates the FLSA。

76.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the FLSA Collective at the statutory minimum wage rate violates the FLSA when they knew or should have known such was due and that failing to do so would financially injure the Plaintiff and Collective Action members. Therefore, Plaintiff and the FLSA collection shall recover from Defendants their unpaid minimum wages, and additionally an equal amount as liquidated damages.

**COUNT V**

**[Violations of the NJWHL—Minimum Wages
Brought on behalf of Plaintiff]**

77.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

78.    N.J.A.C. 12:56-3.1 provides the New Jersey State minimum wage rate, and the rate is adjusted every year. Pursuant to N.J.A.C. 12:56-3.1, in 2016, the minimum wage rate was 8.38; in 2017, the minimum wage rate was $8.44 per hour; On or after January 1, 2018 the minimum wage rate was $8.60 per hour."; and on or after January 1, 2019, and before July 1, 2019, the rate became $8.85 per hour.

79.    NJWHL also listed the state minimum wage rate for the last three years.

80.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

81.    Here, as discussed above, from December 2014 to the summer of 2018, Plaintiff Cao worked for 66 hours a week. However, he was paid at a fixed rate of $50 per day regardless

of the number of hours he worked a day. Therefore, Plaintiff's average hourly wage was $4.55 (50x6/66).

82.     From the fall of 2018 to June 26, 2019, Plaintiff Cao was worked for 57.5 hours a week, as discussed above. And Plaintiff was still paid $50 per day. Therefore, Plaintiff Cao's average hourly wage was $4.35 (50x5/57.5).

83.     Thus, at all relevant times, Plaintiff Cao was paid below the New Jersey state minimum wage rate (as listed above).

84.     Defendants' failure to pay Plaintiff at the required statutory minimum wage rate violates the NJWHL, and NJAC.

85.      Defendants knowingly and willfully disregarded the provisions of the NJWHL as evidenced by their failure to compensate Plaintiff at the statutory minimum wage rate violates the NJWHL when they knew or should have known such was due and that failing to do so would financially injure the Plaintiff and Collective Action members. Therefore, Plaintiff shall recover from Defendants their unpaid minimum wages, and additionally an equal amount as liquidated damages.

## Prayer For Relief

WHEREFORE, Plaintiff, on behalf of himself, and the FLSA collective, respectfully request that this court enter a judgment providing the following relief:

a)     Authorizing plaintiff at the earliest possible time to give notice of this collective action, or that the court issue such notice, to all persons who are presently, or have been employed by defendants as non-exempt tipped or non-tipped employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to

join this lawsuit if they believe they were denied proper hourly compensation and premium overtime wages;

b)  Certification of this case as a collective action pursuant to FLSA;

c)  Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and his counsel to represent the Collective Action Members;

d)  A declaratory judgment that the practices complained of herein are unlawful under FLSA and NJWHL;

e)  An injunction against Honshu, LLC, d/b/a Honshu Sushi, its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)  An award of unpaid overtime wages due under FLSA and NYWHL, whichever is greater;

g)  An award of unpaid minimum wages due under FLSA and NYWHL, whichever is greater;

h)  An award of improperly retained tips or gratuities according to FLSA.

i)  An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay overtime compensation pursuant to 29 U.S.C. §216;

j)  An award of liquidated and/ or punitive damages as a result of Defendants' willful failure to pay overtime compensation pursuant to NJWHL;

k)      An award of liquidated and/or punitive damages as a result of Defendants'
knowing and willful failure to pay minimum wages pursuant to 29 U.S.C. §207(a);

l)      An award of liquidated and/or punitive damages as a result of Defendants'
knowing and willful failure to pay minimum wages pursuant to NJWHL;

m)      An award of costs and expenses of this action together with reasonable attorneys'
and expert fees pursuant to 29 U.S.C. §216(b) and NJWHL 34:11-56a25;

n)      The cost and disbursements of this action;

o)      An award of prejudgment and post-judgment fees;

and

p)      Such other and further legal and equitable relief as this Court deems necessary, just,
and proper.

## **JURY TRIAL DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff, on behalf of
himself and the Collective Action Members, demands a trial by jury on all questions of fact raised
by the complaint.


Dated: Flushing, New York   July 17, 2019          HANG & ASSOCIATES, PLLC.

                                                          /s Qinyu Fan
                                                   _____

                                                   Qinyu Fan, Esq.
                                                   136-18 39th Avenue, Suite 1003
                                                   Flushing, New York 11354
                                                   Tel: 718.353.8588
                                                   qfan@hanglaw.com
                                                   *Attorneys for Plaintiffs*

# EXHIBIT 1

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by HONSHU LLC and Fendai Chen and/or related entities and individuals. I consent to be a plaintiff in an action to collect unpaid wages.  I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

CAO . WEI  QING
Full Legal Name (Print)

Cao wei qing
Signature

7/10/2019
Date